UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT WARD CADY,

        Plaintiff,

v.

        Case Number 07-11369-BC
        Honorable Thomas L. Ludington

COUNTY OF ARENAC,
CURTIS G. BROUGHTON, *an individual
and in his official capacity as Arenac County
Prosecutor*,

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE

On March 29, 2007, Plaintiff Robert Cady filed a complaint against Defendants County of Arenac (county) and Curtis Broughton, its prosecutor, alleging a single claim of a violation of 42 U.S.C. § 1983 based on a violation of Plaintiff's right of petition under the First Amendment. On March 19, 2008, the Court held a hearing on Defendants' motion for dismissal and summary judgment under Federal Rules of Civil Procedure 12 and 56.

I.

According to Plaintiff Robert Cady's complaint, he was involved in a tussle with several individuals on their property as they hosted an event for Labor Day. According to the police incident report of September 4, 2004, officers were dispatched to the property in response a claim that a person was being restrained after he was observed breaking into vehicles. The officers arrived to find Plaintiff being assisted off the ground. In his interview with the police, Plaintiff stated that he was hit by a water balloon and sought to investigate. When pressed that he was not wet, he stated

that he stopped at what he believed was a friend's house, and then people jumped him. In interviews with the police, four individuals (Robert Seaman, Marcia Seaman, Scott Francis Diebold, and Thomas Kolczynski) gave a consistent version of events: Plaintiff was observed on the property and then assaulted one of them, whereupon the others sought to assist and then restrained Plaintiff until the police arrived. The police do not appear to have credited the account of another witness, Robert Dewar, that Diebold punched Plaintiff in the face five times. The police arrested Plaintiff, noting his only injury as redness on the side of his head, and identified Robert and Marcia Seaman as victims.

Plaintiff's version of the same situation, as described in his complaint, differs dramatically. He asserts that Robert Seaman pinned him to the ground and held him down while Marcia Seaman struck Plaintiff with a telephone and while Diebold and Kolczynski punched and kicked him.

On September 7, 2004, Defendant Broughton, the prosecutor for Defendant county, authorized charges of misdemeanor assault and battery against Plaintiff, pursuant to Mich. Comp. Laws § 750.81. On April 11, 2005, Plaintiff, his defense counsel, and Richard Vollbach, an assistant prosecutor, signed a deferred prosecution agreement. There, the state agreed to dismiss the two counts of assault and battery against Plaintiff, subject to several conditions. One of those conditions stated, "If [Plaintiff] pursues any civil claims or remedies against victims or other participants pertaining to incidents relative to this matter, [the state] will reissue charges." *Deferred Prosecution Agreement*, Dft. Br., Ex. 8 [dkt #15-9]. The agreement concluded by stating that if Plaintiff violated any term of the agreement in the next six months, then charges against him would re-issue. *Id*.

At his deposition, Plaintiff stated that he believed that the condition not to file suit was unconstitutional when he signed the agreement. Even at that time, he intended to file suit against

the Seamans and/or Defendant prosecutor. Based on the input of his then-defense counsel and the attorney who represented him at the later trial (who was coincidentally in the hall at the time) that the provision was unconstitutional, Plaintiff accepted the agreement. He believed that signing that day allowed him to leave immediately, rather than continuing with additional trips to the courthouse. (He viewed his alleged 20 trips to the courthouse for plea negotiations as the assistant prosecutor's attempt to get him not to pursue a civil action.) Plaintiff also stated that he signed the agreement within minutes of receiving it and had not previously seen the condition regarding a bar on civil suits. Finally, he did not direct his attorney to relate his views about the purported illegality of the provision to the assistant prosecutor, or his intent to sue the Seamans.

In his deposition, the assistant prosecutor represented that Plaintiff's defense counsel first suggested including a waiver of civil claims. The assistant prosecutor also described his own thinking in including that provision. He believed his role as a prosecutor requires him to reach a resolution satisfactory to a defendant, to the prosecutor's office, and, if possible, to any victims. *Vollbach Dep.*, p. 34; Dft. Br., Ex. 5 [dkt #15-6]. He maintained that he has a "duty to consult with and address issues that are raised by victims in criminal cases." *Id*. at p. 33. While victims' concerns do inform on a prosecutor's thinking, he stated that their concern about civil litigation generally does not inform on his actions.[1] *Id*. at p. 15. Still, he noted that the "victims" faced

---

[1]Mich. Comp. Laws § 780.756 provides for specific rights for victims of crimes, including notice of, *inter alia*, the procedural steps involved in a prosecution, a list of a victim's rights, a means for a victim to communicate to the prosecutor an intent to exercise these rights, and details regarding compensation from the crime victim services commission. In particular, Mich. Comp. Laws § 780.756(3) provides:

> Before finalizing any negotiation that may result in a dismissal, plea or sentence bargain, or pretrial diversion, the prosecuting attorney shall offer the victim the opportunity to consult with the prosecuting attorney to obtain the victim's views

"threats" of litigation. *Id.* at pp. 29, 31; *see also id.* at p. 28 ("I had a concern that . . . if I dismissed, my victims were going to complain because he's going to file a lawsuit . . . ."). The assistant prosecutor "felt [he] was going to get a hit from the victims regardless." *Id.* at p. 34. In fact, he did receive complaints from them regarding his handling of the case. *Id.* He also stated that Plaintiff's representation by competent defense counsel influenced his thinking. When he and Plaintiff's defense counsel discussed the waiver of civil actions, the assistant prosecutor maintains that defense counsel left to confer with both Plaintiff and Plaintiff's civil counsel.

According to Defendant Broughton, his office has issued only one deferred prosecution agreement that included a waiver of civil claims. In his deposition, he stated that he had no part in the assistant prosecutor's discussions with Plaintiff or his counsel about the agreement.

On April 18, 2005, the state court granted the assistant prosecutor's motion for nolle prosequi and dismissed the case without prejudice. According to Plaintiff's complaint, he filed a civil action against the Seamans, Diebold, and Kolczynski on August 26, 2005. (According to the assistant prosecutor's deposition, the Seamans' attorney alerted him to Plaintiff's civil suit.)

In November 2005, Defendant Broughton authorized the re-issuance of charges against Plaintiff, because Plaintiff violated the terms of the release-dismissal. Defendant Broughton himself represented the state during that trial. On September 21, 2006, a jury acquitted Plaintiff of all charges.

On March 29, 2007, Plaintiff filed suit against Defendants county and Broughton, naming Defendant Broughton in an official and individual capacity. Plaintiff advances a single claim of a

> about the disposition of the prosecution for the crime, including the victim's views about dismissal, plea or sentence negotiations, and pretrial diversion programs.

violation of 42 U.S.C. § 1983 based on a violation of his First Amendment rights.

II.

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176,

179 (6th Cir. 1996).

III.

Defendants' motion for summary judgment requires the Court to address the following issues: (1) whether Plaintiff can pursue a claim against Defendant county or Defendant Broughton, given the limitations on municipal liability under *Monell v. Dep't of Social Serv.*, 436 U.S. 658 (1978), and *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); (2) whether Plaintiff can pursue a claim of a denial of the right of petition under the First Amendment, in light of *Town of Newton v. Rumery*, 480 U.S. 386 (1987); and (3) whether Defendants have absolute prosecutorial immunity.

A.

"[A] municipality cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000) (citation omitted). To establish liability against a governmental entity under § 1983, a plaintiff must show that an unconstitutional action follows from a policy, regulation, or decision officially adopted by that government entity. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978); *see also Scarbrough v. Morgan County Bd. of Education*, 470 F.3d 250, 261 (6th Cir. 2006) (citation omitted). Alternatively, a plaintiff can show that a constitutional deprivation occurred pursuant to a "custom" of a governmental entity, even if not formally enacted. *Monell*, 436 U.S. at 690-691. "Only then can the action of the municipality itself . . . be said to have caused the harm," rather than imputing to a government entity the bad acts of individual employees. *Shameizadeh v. Cunigan*, 336 F.3d 535, 556 (6th Cir. 2003) (citation and internal quotations omitted).

In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), the Supreme Court held that

"municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." That is, if a person responsible for making final decisions sets direction for a municipal entity, even if only in one instance that is not repeated, the municipal entity can be liable for the consequence of that decision. *Id*. at 480-481; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985); *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

Here, Plaintiff has not identified any custom or policy maintained by Defendant county of using release-dismissal agreements that might be unconstitutional. Plaintiff has, however, identified the involvement of a policymaker with final decision-making authority: Defendant Broughton. According to his deposition, Defendant Broughton participated in the decision to re-issue charges against Plaintiff. Defendant Broughton stated that the charges re-issued because Plaintiff had breached the deferred prosecution agreement. Additionally, Defendant Broughton represented Defendant county in Plaintiff's criminal trial. Consequently, reserving for later discussion the constitutionality of the deferred prosecution agreement here, Defendant Broughton directly participated in the activity that is the basis for Plaintiff's claim – an alleged violation of his First Amendment rights due to the existence of, enforcement of, and prosecution pursuant to the deferred prosecution agreement. As the county prosecutor, Defendant Broughton's involvement provides a basis for asserting municipal liability against Defendant county and against Defendant Broughton in his official capacity.

B.

Defendants construe Plaintiff's claim of a violation of his First Amendment rights as a purported violation of the right to petition the government for redress, and nothing in Plaintiff's response indicates anything to the contrary. Notably, Plaintiff's complaint describes his single claim

as one for retaliation for making a statement on a matter of public concern by filing a complaint in a civil lawsuit. At no point did Plaintiff return to this argument in his filings or in his oral argument. Similarly, at no point did Defendants contend that no constitutional right was implicated. Instead, they accept Plaintiff's assertion that some aspect of the First Amendment was at issue due to Defendants' prosecution of Plaintiff for his violation of a deferred prosecution agreement.

The First Amendment provides, "Congress shall make no law . . . abridging . . .the right of the people . . . to petition the Government for a redress of grievances." The right of access to the courts is just one avenue for a citizen to petition the government, but that right holds a special place as a ready example of a petition for redress of grievances, addressed to the government by a citizen. *See California Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Following the parties' lead, then, the central issue is whether Defendants violated Plaintiff's right of access to the courts by permitting and enforcing an agreement to waive a right to sue that is, under Supreme Court precedent, arguably unenforceable.

Defendants next address the Supreme Court's decision in *Town of Newton v. Rumery*, 480 U.S. 386 (1987), an approach to which Plaintiff raised no objection. In *Rumery*, the Supreme Court refused to adopt a rule that invalidated an agreement to waive a right to sue under 42 U.S.C. § 1983 was *per se* unenforceable as contrary to public policy. Instead, the Court ruled that a challenge to such agreements, generally referred to as "release-dismissals," must be reviewed on a case-by-case basis. While the Court acknowledged the possibility for abuse if a defendant were to agree either involuntarily or in an uninformed manner, the Court noted that criminal defendants can waive many constitutional rights, so waiver of a civil constitutional right did not require any additional showing. *See id*. at 393.

In a widely cited concurrence, Justice O'Connor added that the legitimacy of a release-dismissal turns on whether it was "voluntarily made, not the product of prosecutorial overreaching, and in the public interest." *Id*. at 401 (O'Connor, J., concurring). As to the first two factors, she would explore such considerations as the knowledge and experience of the defendant, the circumstances of the execution of the release, such as representation by counsel, the nature of the charges, the existence of a legitimate criminal justice objective for obtaining the release, and judicial supervision. *Id*. at 401-402; *see also id*. at 394 (plurality opinion); *Hill v. City of Cleveland*, 12 F.3d 575, 577 (6th Cir. 1993).

In *Coughlen v. Coots*, 5 F.3d 970, 973-974 (6th Cir. 1993), the Sixth Circuit endorsed the three factors outlined by Justice O'Connor – voluntariness, absence of prosecutorial misconduct, and the effect on public interests – as the basis for performing a case by case assessment of the validity of a release-dismissal agreement. In dicta, the court explored scenarios that might suffice as legitimate criminal justice objectives, so as to show the absence of prosecutorial overreaching and of any adverse effect on public interests. Those several examples largely emphasize the effects on the defendant and the prosecutor, such as a balancing of the cost of prosecution against the benefit of conviction, the doubtfulness of the strength or availability of evidence, or the avoidance of liabilities and expenses to either side. *Id*. at 975.

In *Salkil v. Mt. Sterling Twp. Police Dep't*, 458 F.3d 520, 528-529 (6th Cir. 2006), the court applied *Rumery's* case-by-case analysis to a challenge to a release-dismissal that included a waiver of claims against the municipality and upheld the agreement. The court allowed, however, an inference that such a release-dismissal should not be enforced, if secured in response to evidence of police misconduct. As to prosecutorial misconduct, that question is to be determined by the court,

rather than a jury. *Hill*, 12 F.3d at 579 n.3 (citation omitted). As to public interests, the court in *Hill*, 12 F.3d at 579, relied on (1) the conflicting evidence between the parties and (2) the subsequent mistrial due to a lack of agreement among the jurors on the criminal charges to enforce a release-dismissal, thus allowing "everyone to declare the case a draw and go home." (Citations and internal quotations omitted).

Here, applying the three factors of *Rumery*, as expressed by Justice O'Connor, the Court concludes that the deferred prosecution agreement in the instant case is unenforceable. Regarding voluntariness, Plaintiff's own deposition testimony makes clear that he acted without coercion. Although he made his decision to sign the agreement in a short amount of time, he had advice of counsel, as well as the advice of another attorney who later represented him. Further, Plaintiff is a well-educated professional. Most importantly, his deposition testimony shows his own frame of mind and certainty that he could and would subsequently file suit, regardless of what the deferred prosecution agreement stated. Thus, that Plaintiff voluntarily assented to the deferred prosecution agreement is not contested.

His voluntary conduct, however, does not dispose of whether the deferred prosecution agreement was enforceable under *Rumery*. The factor of whether the prosecutor's office engaged in misconduct is a question for decision by a judge, rather than a jury. *Hill*, 12 F.3d at 579 n.3 (citation omitted). The corollary question of whether this agreement was in the public interest also seems to fall within the purview of a court's review.

Some evidence of prosecutorial overreaching is evident in this case. *Rumery* and its progeny involve the release of claims by the government; they do not involve the release of claims against third parties, such as the civil defendants that Plaintiff contemplated suing (and did sue) here.

Michigan has enacted protections for the victims of crimes. *See* Mich. Comp. Laws § 780.756. While some of those provisions do require a prosecutor to inform a victim about pursuing restitution and to consider the input of victims regarding a dismissal or a plea, none of these provisions go so far as to authorize a prosecutor to consider – let alone purport to dispose of – potential civil claims against a victim by a criminal defendant.[2] Defendant Broughton, as well as his assistant, overreached their prosecutorial role in departing from consideration of the merits of the criminal charge to affecting third party rights in a civil case. Prosecutors may, indeed must, make decisions from competing witnesses' stories about common events, but they have neither a professional nor a statutory basis to settle associated civil claims by utilizing their authority to initiate criminal process.

For similar reasons, the instant deferred prosecution agreement cannot be said to be in the public interest. That a prosecutor, sworn duty is to act on behalf of all citizens, so focused on the concern of a selected witness-citizen to avoid civil liability is not consistent with the even-handed administration of justice. Indeed, during his deposition, the assistant prosecutor repeatedly referred to his fear that the so-called victims would complain about his handling of the case. Under these circumstances, the Court cannot conclude that the instant deferred prosecution agreement served the public interest.

Thus, notwithstanding the uncontested voluntariness of Plaintiff's assent to the agreement,

---

[2]*But see Balcom v. Zambon*, 658 N.W.2d 156, 162-163 (Mich. Ct. App. 2002) (stating in dicta that negotiation for the release of claims of third parties is unobjectionable, but expressing concern about the dismissal of claims against the government or its employees); *see also Stamps v. Taylor*, 554 N.W.2d 603, 607 (Mich. Ct. App. 1996) (overruling a prior *per se* rule against release-dismissal agreements in light of *Rumery* and replacing that rule with the Supreme Court's standard from *Rumery*).

the deferred prosecution agreement is unenforceable as a matter of law. Because Plaintiff has established this element of his claim that the existence and enforcement of this release-dismissal violated his right of access to the courts, Defendants have not shown their entitlement to summary judgment on his assertion that they violated 42 U.S.C. § 1983, based on a disregard of his First Amendment rights.

C.

Notwithstanding Defendants' exposure to liability based on *Pembaur* and *Rumery*, Defendants advance an additional basis for protection from liability: absolute prosecutorial immunity. In *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), the Supreme Court held that a prosecutor has absolute immunity for activities that are integral to the judicial process. These activities include initiating a case, pursuing criminal prosecution, and presenting a case at trial. Even a prosecutor's failure to disclose the insufficiency of evidence propounded at a probable cause hearing or use of false testimony at trial have received immunity, because of the improprieties occurred at a juncture integral to the judicial process. *Burns v. Reed*, 500 U.S. 478 (1990); *Spurlock v. Thompson*, 300 F.3d 791 (6th Cir. 2003). Where courts have concluded that prosecutorial immunity did not apply, some measure of separation existed between the prosecutor's alleged abuse and the judicial proceedings. *See Kalina v. Fletcher*, 522 U.S. 118 (1997) (no immunity for statements offered by prosecutor, solely in capacity as a witness); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (no immunity for fabricating evidence during a preliminary investigation, giving legal advice to the police, or speaking to the media); *Burns*, 500 U.S. 478 (no immunity for advising police during an investigation).

In striking the balance in *Imbler*, 424 U.S. at 427, to foreclose liability to "the genuinely

wronged defendant . . . against a prosecutor whose malicious or dishonest action deprive[d the defendant] of liberty," the Supreme Court recognized the costs and risks. The Court further emphasized:

> the immunity of prosecutors from liability in suits under § 1983 does not leave the public powerless to deter misconduct or to punish that which occurs. This Court has never suggested that the policy considerations which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law. . . . Moreover, a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers. These checks undermine the argument that the imposition of civil liability is the only way to insure that prosecutors are mindful of the constitutional rights of persons accused of crime.

*Imbler*, 424 U.S. at 428-429 (citations and footnote omitted).

In this instance, Defendant county and prosecutor took the actions of reissuing charges against Plaintiff and then prosecuting him at trial. Connected to that conduct, albeit not directly participated in by Defendant Broughton, was the deferred prosecution agreement. All three acts are subject to prosecutorial immunity. The first two – issuance of charges and trial – are indisputably intertwined with the judicial process of prosecution and, so, do not come within any of the investigative, advisory, or administrative procedures that might restrict the availability of prosecutorial immunity. Similarly, the deferred prosecution agreement itself, even though it arguably contained an unconstitutional restriction on Plaintiff's right to petition the government for redress of grievances, is also subject to prosecutorial immunity. In Michigan, the authority to permit such an agreement is not extended to a prosecutor but to the court. Mich. Comp. Laws § 771.1(2) ("In an action in which the court may place the defendant on probation, the court may delay sentencing the defendant for not more than 1 year to give the defendant an opportunity to prove to the court his or her eligibility for probation or other leniency compatible with the ends of justice and

the defendant's rehabilitation . . . ."). Here, on April 11, 2005, Plaintiff signed a stipulated order of *nolle prosequi* that the state court filed that same date. Accordingly, even entry of the deferred prosecution agreement itself was integral to the judicial process of adjudicating Plaintiff's guilt or innocence. As such, prosecutorial immunity extends to the conduct that Plaintiff now challenges.

Based on that absolute immunity, Plaintiff cannot pursue the instant claim against Defendants, and the Court will dismiss his complaint. Because absolute prosecutorial immunity protects Defendants from claims brought pursuant to 42 U.S.C. § 1983 for the use of and prosecution pursuant to the deferred prosecution agreement, the Court need not discern and resolve the particular legal basis for Plaintiff's claim of a violation of his First Amendment rights. The fact that Plaintiff advances no argument based on the legal theory identified in his complaint, in contrast to the legal theories advanced by Defendants and accepted as governing by Plaintiff in their respective filings, is a matter that the application of absolute immunity renders moot. Similarly, Defendants' immunity forecloses any argument that Defendants could have raised regarding whether Plaintiff has even identified a constitutional right at issue based on Defendants' conduct.

IV.

Accordingly, it is **ORDERED** that Defendants' motion for dismissal and for summary judgment [dkt #15] is **GRANTED**. Plaintiffs' complaint is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 15, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 15, 2008.

                                          s/Tracy A. Jacobs
                                          TRACY A. JACOBS